IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ANGELA HENRY and ERIC HENRY,<br><br>                Plaintiffs,<br><br>            v.<br><br>BRIAN SAX,<br><br>                Defendant. | Case No. 3:24-cv-00077-SLG |

## ORDER ON MOTION TO DISMISS OR TRANSFER VENUE

Before the Court at Docket 11 is Defendant Brian Sax's Motion to Dismiss or, in the Alternative, to Transfer Venue. Plaintiffs Angela Henry and Eric Henry filed a response in opposition at Docket 15, and Mr. Sax replied at Docket 22. Oral argument was not requested and was not necessary to the Court's determination.

## BACKGROUND

This dispute arises out of a loan from Plaintiffs, who are Alaska residents, to Mr. Sax, who is a California resident.[1] Plaintiffs and Mr. Sax have known each other socially since at least 2010.[2] Around February 2018, Mr. Sax began calling and emailing Plaintiffs with requests to borrow money to invest in a California

---

[1] *See* Docket 1 (Compl.) at ¶¶ 1–2.

[2] Docket 12 (Decl. of Brian Sax) at ¶ 3.

company, Convergence Wireless, Inc. ("Convergence").[3] According to the Complaint, Plaintiffs and Mr. Sax then entered into a promissory note on November 26, 2018 ("Note 1").[4] Note 1 sets out that "Convergence Wireless, Inc. ("Maker") promises to pay to the order of Angela Henry ("Holder") on March 31, 2020 (the "Maturity Date"), the sum of Five Hundred Ninety Thousand Dollars ($590,000), in consideration of and repayment of Holder's loan to the Maker in the amount of Two Hundred Fifty Thousand Dollars ($250,000)."[5] Note 1 is signed by Mr. Sax as President of Convergence.[6]

Mr. Sax and Convergence then defaulted on Note 1 by "failing to pay any amount on or before March 31, 2020."[7] Mr. Sax "justified his failure to pay on the basis that Convergence was alleged to have taken the proceeds from Plaintiffs'

---

[3] *See* Docket 1 at ¶ 6; Docket 15-1 at ¶ 8 (Decl. of Angela Henry). The Complaint identifies the entity as "Convergent Wireless, Inc." but both parties' subsequent filings recognize that the correct entity is "Convergence Wireless, Inc." *See*, *e.g.*, Docket 11 at 2 n.2; Docket 15 at 4.

[4] Docket 1 at ¶ 7.

[5] Docket 1-1. The loan amount specified in Note 1 is inconsistent with Plaintiffs' Complaint, which alleges that, through Note 1, Plaintiffs promised "to loan Sax and Convergent the sum of *$500,000* and in exchange Sax was to ensure that Plaintiffs were repaid the sum of $590,000." Docket 1 at ¶ 7 (emphasis added). Ms. Henry's declaration clarifies this discrepancy somewhat by averring that Plaintiffs initially invested $250,000 with Mr. Sax, and later invested another $250,000, for a total investment of $500,000. Docket 15-1 at ¶ 8.

[6] Docket 1-1.

[7] Docket 1 at ¶ 8.

Case No. 3:24-cv-00077-SLG, *Henry v. Sax*
Order on Motion to Dismiss or Transfer Venue
Page 2 of 19

Case 3:24-cv-00077-SLG   Document 25   Filed 12/19/24   Page 2 of 19

loan and misappropriate [sic] those funds."[8] Mr. Sax subsequently filed suit in California state court to force Convergence to repay the misappropriated funds.[9] That lawsuit was funded at least in part by a loan to Mr. Sax from his parents.[10]

After Mr. Sax initiated his lawsuit against Convergence, the Complaint alleges that Plaintiffs signed a second promissory note on January 28, 2022 ("Note 2" or, with Note 1, "the promissory notes") that contained the following terms: Mr. Sax agreed to pay Plaintiffs the principal sum of $500,000, plus interest at a rate of two percent annually, retroactive to the date of the original promissory note; payments to Plaintiffs were to begin within 60 days after Mr. Sax's parents were reimbursed $380,000 from the collection attempts against the defendants in Mr. Sax's California state court case; and Mr. Sax was to make a minimum monthly payment of two percent of the remaining debt or $1,000, whichever was greater.[11] The copy of Note 2 attached to Plaintiffs' Complaint is unsigned by Mr. Sax.[12]

---

[8] Docket 1 at ¶ 8.

[9] Docket 1 at ¶ 8.

[10] Docket 1 at ¶ 8.

[11] Docket 1-2 (Note 2). *But see* Docket 1 at ¶ 9 (alleging that Note 2 contained substantially the same terms except for a starting sum of $550,000).

[12] *See* Docket 1-2.

Case No. 3:24-cv-00077-SLG, *Henry v. Sax*
Order on Motion to Dismiss or Transfer Venue
Page 3 of 19

Case 3:24-cv-00077-SLG   Document 25   Filed 12/19/24   Page 3 of 19

Plaintiffs filed the Complaint that initiated this action in the United States District Court for the District of Alaska in April 2024.[13] The Complaint alleges that Mr. Sax's parents have been "paid back amounts in excess of $380,000, thus triggering the repayment obligations contained in the new promissory note."[14] However, according to the Complaint, Mr. Sax and his parents "conspired together to take the position that his parents had not been paid back $380,000, thus creating a false justification for not paying the amounts that were due."[15] The Complaint asserts claims for breach of contract, bad faith, fraud, and unjust enrichment.[16]

Mr. Sax now moves to dismiss the Complaint for improper venue or, in the alternative, to transfer venue to the Central District of California.[17] In support of his motion, Mr. Sax filed a declaration that describes how he met Plaintiffs, his visit

---

[13] Docket 1.

[14] Docket 1 at ¶ 10 ("For example, Sax paid Parents around $2.2 million after the sale of Sax' house. This payment included the amount owed for loaning the money to fund the action against Convergent [sic].").

[15] Docket 1 at ¶ 11.

[16] Docket 1 at ¶¶ 13–30.

[17] Although Mr. Sax requests transfer to the Southern District of California, Docket 11 at 7, the events that Mr. Sax contends warrant transfer appear to have occurred in the Central District of California. Mr. Sax and his parents reside in the Central District, and Mr. Sax's state court case against Convergence was heard within the Central District. *See* Docket 12 at ¶¶ 2, 12; Docket 12-1. Mr. Sax references other events that have occurred "in California" generally, but the Court cannot discern any relevant events that took place within the Southern District of California. *See generally* Docket 12. The Court therefore presumes that Mr. Sax's reference to the Southern District of California is inadvertent and construes Mr. Sax's motion for transfer as requesting transfer to the Central District of California.

Case No. 3:24-cv-00077-SLG, *Henry v. Sax*
Order on Motion to Dismiss or Transfer Venue
Page 4 of 19

Case 3:24-cv-00077-SLG     Document 25     Filed 12/19/24     Page 4 of 19

to see Plaintiffs in Alaska in July 2017, his involvement with Convergence beginning in September 2017, his realization that Convergence's other corporate officers had been "misappropriating vast sums of Convergence's investment and loan capital," and his filing of the lawsuit against Convergence, Convergence's founder, and other individuals associated with Convergence in Superior Court in Orange County, California in April 2019.[18] The Superior Court entered judgment in Mr. Sax's favor in that case on December 15, 2020, and Mr. Sax states that he has since been engaged in efforts to collect against the defendants in that case.[19] Mr. Sax avers that his parents, who reside in California, funded over $380,000 in attorney's fees in the Superior Court litigation, and that, as of the date of his declaration, he had not collected $380,000 from the defendants in that case.[20] Mr. Sax further states that collection efforts have taken place in California, and that his communications with Plaintiffs regarding Note 2 were from California.[21] Mr. Sax attached as an exhibit a copy of the Judgment from the Superior Court case and

---

[18] Docket 12 at ¶¶ 3–5, 9–10.

[19] Docket 12 at ¶ 11.

[20] Docket 12 at ¶ 12.

[21] Docket 12 at ¶ 12.

Case No. 3:24-cv-00077-SLG, *Henry v. Sax*
Order on Motion to Dismiss or Transfer Venue
Page 5 of 19

Case 3:24-cv-00077-SLG   Document 25   Filed 12/19/24   Page 5 of 19

a minute order of the two-and-a-half-hour trial held in that case, in which defendants did not appear.[22]

In response, Ms. Henry filed a declaration of her own.[23] Ms. Henry's declaration states that Plaintiffs have lived in Alaska since 2005,[24] and describes how, beginning in February 2018, Mr. Sax solicited $500,000 from Plaintiffs via emails and phone calls.[25] Ms. Henry also describes later promises by Mr. Sax, including those memorialized in Note 2.[26] Plaintiffs also filed a declaration of Mr. Sax's former wife, Andrea Sax, that Ms. Sax originally filed in her divorce proceedings against Mr. Sax, and copies of various email correspondence between Plaintiffs and Mr. Sax.[27] The declaration of Andrea Sax affirms that Mr. Sax borrowed $500,000 from Plaintiffs, and describes the California Superior Court proceedings related to the Convergence fraud lawsuit, and the terms of Note 2.[28]

---

[22] *See* Docket 12-1 (California Superior Court Judgment and Minute Order).

[23] Docket 15-1 (Decl. of Angela Henry).

[24] Docket 15-1 at ¶ 2. Plaintiffs made temporary visits to hospitals in Colorado and Nebraska in early 2016 and 2017 due to injuries that Mr. Henry experienced at work in Alaska. Docket 15-1 at ¶ 4.

[25] Docket 15-1 at ¶ 8.

[26] Docket 15-1 at ¶¶ 9–10.

[27] Docket 15-3 (Decl. of Andrea Sax); Docket 15-4 (emails between Plaintiffs and Mr. Sax); Docket 15-5 (same); Docket 15-7 (same); Docket 15-9 (same).

[28] Docket 15-3 at ¶¶ 23–27.

Case No. 3:24-cv-00077-SLG, *Henry v. Sax*
Order on Motion to Dismiss or Transfer Venue
Page 6 of 19

Ms. Sax's declaration also states that Mr. Sax paid his parents approximately $1.6 million in proceeds from sale of the Saxes' family home.[29]

This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332.

**LEGAL STANDARDS**

**I.  Motion to Dismiss for Improper Venue**

A defendant may move to dismiss a complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). Venue is proper in (1) the district where any defendant resides, if all defendants reside in the same state; (2) the district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;" or (3), if there is no district in which the claim can otherwise be brought, the district in which any defendant is subject to personal jurisdiction.[30] When a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper.[31]

In the Ninth Circuit, when considering a Rule 12(b)(3) motion to dismiss, courts need not accept the pleadings as true and may consider facts outside the

---

[29] Docket 15-3 at ¶ 15.

[30] 28 U.S.C. § 1391(b).

[31] *Piedmont Label Co. v. Sun Garden Packing Co.,* 598 F.2d 491, 496 (9th Cir.1979).

Case No. 3:24-cv-00077-SLG, *Henry v. Sax*
Order on Motion to Dismiss or Transfer Venue
Page 7 of 19

pleadings.[32] A court must, however, view facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.[33] Courts likewise "may not assume the truth of allegations in a pleading which are contradicted by affidavit,"[34] but factual conflicts between dueling affidavits "must be resolved in the plaintiff's favor."[35]

## II. Change of Venue

Even if venue is proper, a district court may still transfer the case to a more convenient federal district if the transfer is in the interest of justice.[36] The moving party must first show that the action could originally have been brought in the forum to which transfer is sought.[37] The district court must then engage in an "individualized, case-by-case consideration of convenience and fairness" to

---

[32] *Petersen v. Boeing Co.*, 715 F.3d 276, 279 (9th Cir. 2013).

[33] *Id.*

[34] *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

[35] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

[36] 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.").

[37] *Hoffman v. Blaski,* 363 U.S. 335, 343–44 (1960).

Case No. 3:24-cv-00077-SLG, *Henry v. Sax*
Order on Motion to Dismiss or Transfer Venue
Page 8 of 19

Case 3:24-cv-00077-SLG    Document 25    Filed 12/19/24    Page 8 of 19

determine whether to transfer the case.[38] The Ninth Circuit has identified ten factors that a district court may consider in its analysis:

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9) whether a forum selection clause is present; and (10) the relevant public policy of the forum state, if any.[39]

No single factor among those listed above is dispositive, and a court may consider additional factors.[40] However, "unless the balance of factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed," particularly when the plaintiff's chosen forum is their home forum.[41] Moreover,

---

[38] *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

[39] *Davis v. Prop. & Cas. Ins. Co. of Hartford*, Case No. 05-cv-00002-RRB, 2005 WL 1694083, at *1 (D. Alaska July 14, 2005) (citing *Jones*, 211 F.3d at 498–99). Other Ninth Circuit decisions prescribe that courts should consider "private and public interest factors." *See Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986). Regardless of how the factors are presented, they all relate to the central question under § 1404(a) of which forum is more convenient for the parties and witnesses and in the interest of justice. The Court's result would be the same had it followed the public and private division of factors instead of the *Jones* factors.

[40] *See Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013); *see also Gwich'in Steering Comm. v. U.S. Dep't of the Interior*, Case No. 3:19-cv-00208-HRH, 2019 WL 4786951, at *2 (D. Alaska Sept. 30, 2019).

[41] *Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)); *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("[G]reat weight is generally accorded plaintiff's choice of forum."); *Decker Coal Co.*, 805

Case No. 3:24-cv-00077-SLG, *Henry v. Sax*
Order on Motion to Dismiss or Transfer Venue
Page 9 of 19

Case 3:24-cv-00077-SLG   Document 25   Filed 12/19/24   Page 9 of 19

venue transfer is generally inappropriate when "[t]he transfer would merely shift rather than eliminate the inconvenience."[42] The party seeking to transfer venue "bears the burden of showing that the transfer is appropriate."[43]

## DISCUSSION

### I. Motion to Dismiss

The parties agree that the only potential basis for venue in this district is 28 U.S.C. § 1391(b)(2), which provides that a civil action may be brought in the "district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."[44] When determining whether a substantial part of the events giving rise to a breach of contract claim occurred within the selected venue, courts typically focus on "where the contract was negotiated or executed, where the contract was

---

F.2d at 843 ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."); *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1112 (9th Cir. 2020) ("A plaintiff's choice of forum—particularly a plaintiff's 'home forum' is entitled to considerable deference." (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015))); *Geneva Woods Pharmacy, Inc. v. RoigWest, Inc.*, Case No. 3:08-cv-00229-TMB, 2009 WL 10671502, at *3 (D. Alaska July 9, 2009) ("[A] plaintiff's choice of forum is entitled to great deference—especially when it has chosen its home forum. . . .").

[42] *Decker Coal Co.*, 805 F.2d at 843.

[43] *Senne v. Kan. City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1058 (N.D. Cal. 2015) (citations omitted).

[44] *See* Docket 11 at 3–4; Docket 15 at 9–10.

Case No. 3:24-cv-00077-SLG, *Henry v. Sax*
Order on Motion to Dismiss or Transfer Venue
Page 10 of 19

to be performed, and where the contract was allegedly breached."[45] In this day and age, letters, facsimiles, e-mails, and telephone calls that are transmitted from, and received in, a district during the negotiation and execution of a contract may constitute substantial events in the district for venue purposes.[46] Tort claims such as fraud and unjust enrichment may be brought where the allegedly tortious actions took place or where the harms were felt.[47]

Mr. Sax contends, without further elaboration, that "Plaintiffs have failed to allege that a 'substantial' part of the events or omissions giving rise to their claim occurred in Alaska, and they allege that the property they believe is theirs (funds to repay their investments) is actually situated in California."[48] In response, Plaintiffs contend that venue is proper in Alaska because "Brian targeted the Henrys, who were in Alaska; because Brian inundated the Henrys with emails and phone calls while they were in Alaska; because the money was paid from an

---

[45] 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3806 (4th ed.).

[46] *See* 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3806 (4th ed.) (collecting cases).

[47] *See Serv. Women's Action Network v. Mattis*, 320 F. Supp. 3d 1082, 1088 (N.D. Cal. 2018) (citing 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3806 (4th ed.)); *see also Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1076 (9th Cir. 2001) (holding that the "locus of the injury" is "a relevant factor" when analyzing venue under § 1391(b)(2)).

[48] Docket 11 at 3–4.

Case No. 3:24-cv-00077-SLG, *Henry v. Sax*
Order on Motion to Dismiss or Transfer Venue
Page 11 of 19

Case 3:24-cv-00077-SLG   Document 25   Filed 12/19/24   Page 11 of 19

Alaska bank account; and because the money was to be repaid to the same Alaska bank account."[49]

The Court agrees with Plaintiffs that a substantial part of the events giving rise to the claims occurred in Alaska. The Complaint and Ms. Henry's declaration establish that (1) Mr. Sax solicited Plaintiffs' investment when he knew they resided in Alaska, (2) Mr. Sax repeatedly communicated via email with Plaintiffs about the promissory notes while Plaintiffs were in Alaska, (3) the promissory notes were executed by Plaintiffs in Alaska, (4) Plaintiffs transferred money to Mr. Sax and Convergence while in Alaska, by transferring money from an Alaska bank account, and (5) Mr. Sax failed to repay Plaintiffs by failing to send a money transfer to an Alaska bank account. As the district in which Plaintiffs negotiated and executed the agreements that form the basis for their contract claims and the district in which Plaintiffs' alleged tort injury occurred, the District of Alaska has a substantial connection to those claims. Accordingly, the Court will deny Mr. Sax's motion to dismiss.

## II. Motion to Transfer Venue

The parties appear to agree that that this action could originally have been brought in California and is therefore eligible for transfer at the discretion of the

---

[49] Docket 15 at 9.

Case No. 3:24-cv-00077-SLG, *Henry v. Sax*
Order on Motion to Dismiss or Transfer Venue
Page 12 of 19

Case 3:24-cv-00077-SLG   Document 25   Filed 12/19/24   Page 12 of 19

Court pursuant to 28 U.S.C. § 1401.[50] The Court will therefore evaluate whether transfer is appropriate by weighing the ten factors articulated by the Ninth Circuit in *Jones v. GNC Franchising, Inc.*[51]

***1. Location Where Relevant Agreements Were Negotiated and Executed.*** The Court finds that Factor 1 is neutral because the relevant agreements were negotiated and executed by individuals located in both Alaska and California. Specifically, Plaintiffs negotiated and executed the promissory notes while in Alaska, and Mr. Sax is alleged to have negotiated and executed the promissory notes from California.

***2. Familiarity with Governing Law.*** The Court finds that Factor 2 is neutral. The parties disagree on the applicable law: Mr. Sax asserts that, due to choice-of-law provisions in the promissory notes, this dispute will be governed by California law, with which the Central District of California is more familiar.[52] Plaintiffs point out that Mr. Sax has not conceded that the promissory notes are valid and enforceable, and contend that Mr. Sax "cannot claim that [a] note is unenforceable

---

[50] *See* Docket 11 at 3 ("California would be an appropriate place where the action could be filed."); Docket 15 at 13 ("[J]ust because California could also be a valid venue, does not mean that Alaska is not.").

[51] 211 F.3d 495, 498–99 (9th Cir. 2000).

[52] *See* Docket 1-1; Docket 1-2.

Case No. 3:24-cv-00077-SLG, *Henry v. Sax*
Order on Motion to Dismiss or Transfer Venue
Page 13 of 19

and then try to use one of its provisions to his advantage."[53] Therefore, Plaintiffs assert that conventional choice-of-law principles will apply, and that those principles favor applying Alaska law to this dispute.

The Court has not determined the validity of the promissory notes, and so cannot state at this time whether Alaska or California law will apply as to the breach of contract claim.[54] With respect to Plaintiffs' bad faith, fraud, and unjust enrichment claims, Alaska law would presumably apply, and this Court would be more familiar with that governing law.[55] Arguably, however, the choice-of-law clauses in the promissory notes may warrant application of California law to issues "which the parties could have resolved by an explicit provision in the agreement directed to that issue."[56] Ultimately, the applicable law is unsettled at this point in the litigation, and therefore this factor does not weigh in either direction.

---

[53] Docket 15 at 16 n.63.

[54] Whether or not the case is transferred, Alaska's choice-of-law principles will apply. *See* 15 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3846 (4th ed. 2024) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964) ("[W]hen transfer of a diversity of citizenship case is ordered under Section 1404(a) from a court with personal jurisdiction, *Van Dusen* requires the transferee district to apply the choice-of-law rules of the state in which the transferor court sat.")).

[55] *See Samson Tug & Barge Co. v. Koziol,* 869 F. Supp. 2d 1001, 1018 (D. Alaska 2012).

[56] Restatement (Second) of Conflict of Laws §187; *see also Long v. Holland America Line Westours, Inc.,* 26 P.3d 430, 432 (Alaska 2001) (applying the Restatement (Second) of Conflict of Laws).

Case No. 3:24-cv-00077-SLG, *Henry v. Sax*
Order on Motion to Dismiss or Transfer Venue
Page 14 of 19

Case 3:24-cv-00077-SLG   Document 25   Filed 12/19/24   Page 14 of 19

***3. Plaintiff's Choice of Forum.*** Factor 3 weighs heavily against transfer because Plaintiffs' choice of their home forum, the District of Alaska, is entitled to particularly strong deference.[57]

***4. Parties' Contacts with the Forum.*** Factor 4 is neutral as Plaintiffs do not have ongoing contacts with California, and Mr. Sax does not have ongoing contacts with Alaska, apart from the present dispute.[58]

***5. Contacts Related to Action in Chosen Forum.*** The Court finds that Factor 5 is also neutral, as there were contacts related to this action in both Alaska and California.

***6. Differences in Cost of Litigation.*** The Court finds that Factor 6 weighs slightly in favor of transfer to California. Mr. Sax asserts that many more witnesses would have to travel from California to Alaska for trial than vice versa because the Saxes, Mr. Sax's parents, all Convergence Board Members, and all parties to Mr. Sax's state court case are residents of California, whereas Plaintiffs are the only witnesses in Alaska.[59] However, it is not at all clear to the Court that this full parade

---

[57] *See Global Commodities Trading Grp.*, 972 F.3d at 1112 (citations omitted); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981) ("[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum.").

[58] *See generally* Docket 12; Docket 15-1. Plaintiffs have, however, visited California in the past, and Mr. Sax has visited Alaska. Docket 12 at ¶¶ 2–3.

[59] Docket 11 at 6.

Case No. 3:24-cv-00077-SLG, *Henry v. Sax*
Order on Motion to Dismiss or Transfer Venue
Page 15 of 19

Case 3:24-cv-00077-SLG    Document 25    Filed 12/19/24    Page 15 of 19

of witnesses will be relevant to Plaintiffs' claims or to Mr. Sax's defenses.[60]  The Complaint alleges that Mr. Sax's repayment obligation to Plaintiffs was triggered by Mr. Sax's payment to his parents of proceeds from the sale of the Saxes' house, not because of any collections related to Mr. Sax's state court case against Convergence.[61]  To be sure, if the case remains in this district and proceeds to trial, Mr. Sax and other witnesses—such as Mr. Sax's parents—may need to travel to Alaska from California.  Conversely, if the case is transferred to California, both Mr. and Ms. Henry would need to travel there from Alaska not only for trial but also potentially for other pre-trial proceedings.  Although California may be slightly more convenient, given that more potential witnesses reside there, there are not so many potential witnesses in California as to render the forum significantly more convenient in terms of travel time and expenses.

***7. Availability of Compulsory Process.***  The Court finds that Factor 7, like Factor 6, weighs slightly in favor of California because there will likely be some non-party witnesses outside the Court's subpoena power if the action is not

---

[60] *See Williams v. Bowman,* 157 F.Supp.2d 1103, 1108 (N.D.Cal.2001) ("To demonstrate inconvenience of witnesses, the moving party must identify relevant witnesses, state their location and describe their testimony and its relevance.").  Notably, none of the defendants in Mr. Sax's state court case against Convergence and its officers appeared for trial in that case in California Superior Court.  Docket 12-1 at 5.

[61] *See* Docket 1 at ¶ 10.  *But see* Docket 1-2 ("repayment of this Note shall commence within sixty (60) days of the Maker's parents' US$380,000 being fully reimbursed from the collection attempts against the Defendants").

Case No. 3:24-cv-00077-SLG, *Henry v. Sax*
Order on Motion to Dismiss or Transfer Venue
Page 16 of 19

Case 3:24-cv-00077-SLG   Document 25   Filed 12/19/24   Page 16 of 19

transferred. Both this Court and the Central District of California have the power to subpoena non-party witnesses; however, that power extends outside the respective districts only if the place of the relevant trial, hearing, or deposition is "within 100 miles of where the person resides, is employed, or regularly transacts business in person."[62] As discussed in the context of Factor 6, some potential non-party witnesses reside in California, whereas Plaintiffs have not put forward any potential non-party witnesses that reside in Alaska. There is no evidence that any of the California resident non-party witnesses are employed or transact business within Alaska. Consequently, if this action remains in Alaska, compulsory process will not be available for those witnesses at trial and the parties will have to depend on the non-parties' deposition testimony if they are unwilling to appear in person.[63]

***8. Ease of Access to Sources of Proof.*** The Court finds that Factor 8 is neutral because the dispute appears likely to focus almost entirely on electronically

---

[62] Fed. R. Civ. P. 45(c)(1)(A).

[63] *See* Fed R. Civ. P. 45(c) (allowing parties to issue subpoenas to non-parties for depositions and other discovery so long as the deposition or production occurs within one hundred miles of the non-party's residence); Fed. R. Evid. 804 (excepting former testimony of unavailable witnesses from the rule against hearsay); *see also Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n,* Case No. 208CV1448JCMRJJ, 2011 WL 13248287, at *1–2 (D. Nev. Sept. 28, 2011) (recognizing a "preference for live testimony" but denying a motion to transfer to witnesses' home district where parties could play videotaped depositions at trial).

Case No. 3:24-cv-00077-SLG, *Henry v. Sax*
Order on Motion to Dismiss or Transfer Venue
Page 17 of 19

Case 3:24-cv-00077-SLG   Document 25   Filed 12/19/24   Page 17 of 19

available communications and contracts, which can easily be accessed in either district.[64]

**9. Forum Selection Clause.** The Court finds that Factor 9 is neutral because there is no applicable forum selection clause.[65]

**10. Relevant public policy of the forum state.** The Court finds that Factor 10 weighs in favor of the case remaining in Alaska. Alaska's interest in protecting its citizens from fraud is more compelling than the general public interest, shared by both states, in resolving suits involving its citizens.[66]

On balance, the Court finds that Defendant has failed to make a sufficiently strong showing of inconvenience to warrant upsetting Plaintiffs' choice of their home forum.[67] While litigating in Alaska may be inconvenient for Mr. Sax and other potential witnesses, transferring the action to California "would merely shift rather

---

[64] *See* Docket 15-1–15-9; *Brackett v, Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 820 (N.D. Cal. 2008) ("Given technological advances in document storage and retrieval, transporting documents between districts does not generally create a burden.").

[65] Plaintiffs describe the choice-of-law provision in the promissory notes as a "forum selection clause". *See* Docket 15 at 16. However, the provision states only that California law should apply; it does not select a jurisdiction in which claims arising from the contract shall be litigated, and therefore is properly analyzed under Factor 2.

[66] *See Samson Tug & Barge Co. v. Koziol*, 869 F. Supp. 2d 1001, 1019 (D. Alaska 2012) ("Alaska's interest in protecting its citizens from fraud and misrepresentation is more compelling than any public policy that could be attributed to Washington or California . . . .").

[67] *See Decker Coal Co.*, 805 F.2d at 843 ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.").

Case No. 3:24-cv-00077-SLG, *Henry v. Sax*
Order on Motion to Dismiss or Transfer Venue
Page 18 of 19

Case 3:24-cv-00077-SLG    Document 25    Filed 12/19/24    Page 18 of 19

than eliminate the inconvenience," creating inconvenience for Plaintiffs.[68]  Thus, transfer to the Central District of California is not in the interest of justice and is not warranted based on convenience to the parties and witnesses.

## CONCLUSION

In light of the foregoing, Mr. Sax's *Motion to Dismiss, or in the Alternative, to Transfer Venue* at Docket 11 is DENIED.

DATED this 18th day of December, 2024, at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

---

[68] *See Decker Coal Co.*, 805 F.2d at 843.

Case No. 3:24-cv-00077-SLG, *Henry v. Sax*
Order on Motion to Dismiss or Transfer Venue
Page 19 of 19

Case 3:24-cv-00077-SLG   Document 25   Filed 12/19/24   Page 19 of 19